RAYTOWN CONSOLIDATED SCHOOL DISTRICT NUMBER 2,
Respondent,

v.

AMERICAN ARBITRATION ASSOCIATION,
Defendant,

and

The Citizens Bank of Edina, Appellant.

No. WD 50332.

Missouri Court of Appeals,
Western District.

Aug. 22, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1995.

Brian J. Fowler, Martha Madden Weast, Kansas City, for appellant.

James Ziegler, Independence, for respondent.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

Raytown Consolidated School District No. 2 refuses to arbitrate a contract dispute with Citizens Bank of Edina because the district's contract was with Interstate Insulation of America, not the bank. The bank obtained rights to collect Interstate's accounts receivable in bankruptcy proceedings and seeks to collect $100,000, which it claims the district owes Interstate for asbestos removal. When the bank endeavored to arbitrate the matter, the district filed an application in circuit court seeking the court's stay of arbitration proceedings. The circuit court granted the application. The bank appeals, and we reverse.

The dispute arose over a contract dated April 12, 1989, in which Interstate agreed to remove asbestos from seven district school buildings for $252,308. After Interstate finished removing the asbestos, it claimed $109,-176.14 more for removing "newly-discovered" asbestos. On January 29, 1990, the district offered to settle the additional claim by paying $59,091.39 more. On May 24, 1990, the district had paid Interstate $239,692.60, and Interstate was claiming that the balance due was $121,791.54. Interstate rejected the district's offer, and, on September 28, 1990, it

filed an arbitration claim pursuant to a contract provision which said:

> Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and those waived [by making final payment].

Before the matter could be arbitrated, Interstate's creditors forced the firm into bankruptcy. The bankruptcy court suspended the arbitration proceedings. On March 25, 1992, the bankruptcy court ordered the bankruptcy trustee to abandon all interest in Interstate's accounts receivable, and it lifted its stay of the arbitration proceedings. The bank pursued Interstate's claim against the school district as part of Interstate's accounts receivable.

When the arbitration proceedings resumed, the school district refused to participate beyond filing a motion to dismiss. The district contended that its contract with Interstate was not assignable and that the bank had no authority to pursue Interstate's claim against the district. When the arbitrator denied the district's motion to dismiss, the district initiated this action in circuit court which ruled for the district. The circuit court said in its order:

> The [bankruptcy] Court never ordered that Interstate's contracts or contract rights be assigned to Citizens Bank of Edina. If the bank has security interests in proceeds from contracts, then it may be able to obtain them. But the bank does not have the right to arbitrate a contract which does not allow assignability of the arbitration clause without [the school district's] consent.

■ We disagree. The bankruptcy court's order cleared the way for the bank to pursue the security agreement it had with Interstate. By means of Interstate's granting the bank a security interest in its accounts receivable, it gave the bank the right to pursue its claim against the school district. That the bankruptcy court's order did not specifically assign Interstate's claim to the bank was inconsequential.

■ The contract's prohibition against assigning the contract was irrelevant. The contract prohibited only assignment of the contract "as a whole." Interstate did not seek to assign its performance. It granted the bank, through the security agreement, the right to pursue amounts owed it by the school district. The right to receive money due under a contract is not personal in nature and, unless specifically prohibited by the contract, generally can be assigned. *Kenneth D. Corwin, Ltd. v. Missouri Medical Service*, 684 S.W.2d 598, 600 (Mo.App.1985). The contract in this case did not prohibit Interstate's giving the bank the right to collect proceeds from the contract. The contract's provision concerning assignment was:

> The [school district] and [Interstate] respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

■ Hence, the school district's refusal to participate in the arbitration proceedings was wrong under its contract with Interstate. The bank, having received the benefits of Interstate's accounts receivable, stands in Interstate's shoes. The bank has the power to enforce any benefit due and owing Interstate. The enforcement authorized by the contract is the arbitration already initiated by Interstate. The bank has the right to pursue that action.

■ The school district argues that § 435.465, RSMo 1994, makes it "immune" from the bank's arbitration action. That statute says:

1. Sections 435.350 to 435.470 shall apply only to written agreements between commercial persons, or between such persons and those with whom they contract other than commercial persons, involving the submission of any existing controversy to arbitration, or involving a written contract between commercial persons, or between such persons and those with whom they contract other than commercial persons, to submit to arbitration any controversy thereafter arising between such parties. Such agreements and provisions are valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

2. As used in subsection 1 of this section, the term "commercial persons" shall mean all persons and legal entities, excluding any government or governmental subdivision or agency.

The district argues, "This section prevents governmental subdivision[s] such as the [district] from arbitrating against its will[.]"

Any notion that the district is being forced to arbitrate against its will is disingenuous. The district negotiated for the arbitration provision. All the bank seeks to do is to force the district to live up to its agreement.

Moreover, § 435.465.1 does not mean what the district contends. Section 435.465.2 does exclude governmental bodies such as the school district from the definition of "commercial persons." It does not, however, exempt the district from the statute's application. It exempts a governmental entity only from being classified a commercial person. In § 435.465.2, the General Assembly defined "commercial persons" as every entity except for governmental entities. Only a governmental entity cannot be a commercial person.

Who belongs to the classification of "other than commercial persons" in § 435.465.1's exclusion of agreements "between commercial persons, or between such persons and those with whom they contract *other than commercial persons*"? Because only a governmental entity cannot be a commercial person, it is the only entity to which the phrase can possibly refer. So, § 435.465.1 can only mean that it applies to an agreement between a commercial person and a governmental body and that the only agreements not covered by the Uniform Arbitration Act (§§ 435.350 to 435.470) are those between two governmental bodies. Because the contract in this case was between a governmental entity and a commercial person, the statute does not exempt the district from arbitrating the claim.

The school district further argues that Interstate's claim is a nullity as a matter of law because it arose, not from the contract of April 12, 1989, but from an independent, unwritten contract. Whether this is true is a matter to be resolved by the arbitrator.

The district argues that the bank's security interest did not accord the bank any interest in the contract of April 12, 1989, because the security agreement gave the bank "[a]ll contract rights (rights to payment under a contract for ... the furnishing of services, which rights have not been earned by performance)[.]" This, the district contends, shows that the security agreement unlawfully sought to assign Interstate's performance obligation to the bank. This argument, while accurate, overlooks Interstate's accounts receivable which Interstate granted to the bank in the security agreement. The point is without merit.

■ The district's final point is that, even if the bank did lawfully gain Interstate's right to collect from the district, the contract forbade the substitution of the bank for Interstate. The district points to a contract provision which said:

No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial.

The district contends that the bank is a lien holder and is not an indispensable or necessary party.

We disagree. To the extent that the district owes more under the contract of April 12, 1989, the bank holds the right to that money. The bankruptcy court ordered the trustee to abandon all interests in the claim. The bank, not Interstate, is the proper party to enforce Interstate's claim.

We, therefore, reverse the judgment of the circuit court. We remand for entry of a judgment compelling the school district to participate in arbitration of Interstate's claim.

All concur.